IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LANDRY'S, INC., as successor in interest to LANDRY'S MANAGEMENT, L.P., | § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. 4:18-CV-02679 |
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, | § § § | |
| Defendant. | § § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Micah E. Skidmore
Attorney-in-Charge
State Bar No. 24046856
Southern District Bar No. 294941
micah.skidmore@haynesboone.com

Natalie DuBose
State Bar No. 24077481
Southern District Bar No. 3048865
natalie.dubose@haynesboone.com

HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:     (214) 651-5000
Telecopier:    (214) 651-5940

**ATTORNEYS FOR PLAINTIFF LANDRY'S INC.**

**TABLE OF CONTENTS**

I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ....................1

II.    STATEMENT OF THE ISSUES TO BE DECIDED & STANDARD OF REVIEW ........2

III.   SUMMARY ............................................................................................................3

IV.    SUMMARY JUDGMENT EVIDENCE ...........................................................................4

V.     SUMMARY JUDGMENT FACTS ..................................................................................4

       A.     The Policies ..................................................................................................4

       B.     The *Paymentech* Lawsuit. ...........................................................................7

VI.    ARGUMENT & AUTHORITIES ..................................................................................11

       A.     ICSOP Has Not Met Its Summary Judgment Burden..................................11

       B.     ICSOP Is Obligated To Defend Or Pay Landry's Defense Costs Incurred
              In The *Paymentech* Lawsuit.......................................................................12

              1.      The Policies' Coverage "B" Requires ICSOP To Defend Or
                      Pay Landry's Defense Costs. ..............................................................12

              2.      Landry's Has Exhausted The "Retained Amount," If Any,
                      Under The Policies.............................................................................19

       C.     ICSOP's Breach Of Its Duty To Defend And Otherwise Pay Defense
              Costs Is An Automatic Violation Of Texas Insurance Code Chapter 542. ..........21

       D.     Landry's Is Entitled To Attorneys' Fees.....................................................22

VII.   PRAYER ....................................................................................................................23

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acceptance Ins. Co. v. S & S Telecom, Inc.*,
  2001 WL 844749 (Tex. App.—San Antonio July 25, 2001, no pet.) .....................................11

*Am. Econ. Ins. Co. v. Aspen Way Enters.*,
  2015 U.S. Dist. LEXIS 129274 (D. Mont. Sept. 24, 2015) ....................................................14

*Basic Energy Services, Inc. v. Liberty Mut. Ins. Co.*,
  655 F. Supp. 2d 666 (W.D. Tex. 2009) ..............................................................................13, 22

*California Pac. Homes, Inc. v. Scottsdale Ins. Co.*,
  83 Cal. Rptr. 2d 328 (1999) ...................................................................................................20

*Edens v. United Benefit Life Ins. Co.*,
  2001 WL 1143140 (N.D. Tex. Sept. 25, 2001) ....................................................................2, 21

*Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*,
  256 S.W.3d 660 (Tex. 2008) .................................................................................................16

*GIC Servs., L.L.C. v. Freightplus USA, Inc.*,
  866 F.3d 649 (5th Cir. 2017) ..................................................................................................2

*Innovak Int'l, Inc. v. Hanover Ins. Co.*,
  280 F. Supp. 3d 1340 (M.D. Fla. 2017) ..................................................................................16

*Julio & Sons Co. v. Travelers Cas. & Surety Co. of Am.*,
  591 F. Supp. 2d 651 (S.D.N.Y. 2008) .....................................................................................13

*Keeling v. State Farm Lloyds*,
  2002 WL 31230804 (N.D. Tex. Sept. 30, 2002) ....................................................................2, 21

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
  242 S.W.3d 1 (Tex. 2007) ............................................................................................... *passim*

*Lincoln Gen. Ins. Co. v. Reyna*,
  401 F.3d 347 (5th Cir. 2005) ..................................................................................................2

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Merchants Fast Motor Lines, Inc.*,
  939 S.W.2d 139 (Tex. 1997) ..................................................................................................11

*Netscape Communications Corp. v. Fed. Ins. Co.*,
  2009 WL 2634945 (9th Cir. Aug. 27, 2009) ...........................................................................20

*Nutmeg Ins. Co. v. Employers Ins. Co.*,
2006 U.S. Dist. LEXIS 7246 (N.D. Tex. Feb. 24, 2006)......................................................15

*P.F. Chang's China Bistro, Inc. v. Fed. Ins. Co.*,
2016 WL 3055111 (D. Ariz. May 31, 2016) ....................................................................17, 18

*Pac. Coast Bldg. Products, Inc. v. AIU Ins. Co.*,
300 F. App'x. 546 (9th Cir. 2008) ....................................................................................20

*Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*,
279 S.W.3d 650 (Tex. 2009)...........................................................................................22

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*,
382 F.3d 546 (5th Cir. 2004) ..............................................................................13, 14, 21

*Registry Dallas Assocs., L.P. v. Wausau Bus. Ins. Co.*,
2004 U.S. Dist. LEXIS 5771 (N.D. Tex. Feb. 26, 2004).................................................7, 15

*Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*,
724 A.2d 1117 (Conn. 1999) ..........................................................................................14

*St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Texas*,
249 F.3d 389 (5th Cir. 2001) ...........................................................................................12

*St. Paul Fire & Marine Ins. Co. v. Rosen Millennium, Inc.*,
2018 WL 4732718 (M.D. Fla. Sept. 28, 2018) ............................................................16, 17

*Tamm v. Hartford Fire Ins. Co.*,
2003 WL 21960374 (Mass. Super. Ct. July 10, 2003) ......................................................14

*TIG Ins. Co. v. Dallas Basketball, Ltd.*,
129 S.W.3d 232 (Tex. App.—Dallas 2004, pet. denied).................................................14, 15

*Travelers Indem. Co. of Am. v. Portal Healthcare Solutions, L.L.C.*,
644 F. App'x. 245 (4th Cir. 2016) ..................................................................................15, 20

*Vaughan v. Hartford Cas. Ins. Co.*,
277 F. Supp. 2d 682 (N.D. Tex. 2003) ............................................................................21

*Vogel v. Veneman*,
276 F.3d 729 (5th Cir. 2002) ..........................................................................................11

*Western Rim Investment Advisors v. Gulf Ins. Co.*,
269 F. Supp. 2d 836 (N.D. Tex. 2003) ............................................................................15

## Statutes

FED. R. CIV. P. 56(a) ......................................................................................................11

iii

TEX. CIV. PRAC. & REM. CODE § 38.001 .......................................................................................23

TEX. INS. CODE. § 542.051(2) .......................................................................................................21

TEX. INS. CODE § 542.058 .............................................................................................................22

TEX. INS. CODE § 542.060 .............................................................................................................22

TEX. INS. CODE § 542.060(a) .........................................................................................................23

TEX. INS. CODE. § 542.0609(a) ......................................................................................................21

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LANDRY'S, INC., as successor in interest | § | |
| to LANDRY'S MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4:18-CV-02679 |
| THE INSURANCE COMPANY OF | § | |
| THE STATE OF PENNSYLVANIA, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Landry's, Inc., as successor in interest to Landry's Management, L.P.
("Landry's") files this Response in Opposition to Defendant the Insurance Company of the State
of Pennsylvania's ("ICSOP's") Motion for Summary Judgment (the "Response") and would
respectfully show the Court as follows:

**I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

This is an insurance coverage dispute over ICSOP's duty to defend underlying data breach
litigation against Landry's (the "*Paymentech* Lawsuit") under four general liability policies that
insure suits seeking damages because of the oral or written publication, in any manner, of material
that violates a person's right of privacy.  ICSOP and Landry's have each filed summary judgment
motions over ICSOP's duty to defend and/or pay Landry's defense costs incurred in the
*Paymentech* Lawsuit.[1]  Landry's Response to ICSOP's motion for summary judgment is below.

---

[1] Landry's Motion for Partial Summary Judgment requested summary judgment with respect to one of the four
policies.  Doc. No. 8.  ICSOP's Motion for Summary Judgment included all four policies at issue.  Doc. No. 10.

Although discovery has not yet been completed, all parties agree this duty-to-defend action is ripe for summary judgment.[2]

## II.   STATEMENT OF THE ISSUES TO BE DECIDED & STANDARD OF REVIEW

The resolution of the following legal issues demonstrates that ICSOP's Motion for Summary Judgment should be denied in its entirety:

1.    Did ICSOP establish as a matter of law that it owes Landry's no duty to defend and/or pay defense expenses under the 2013-14 Golden Nugget Policy?[3]

2.    Did ICSOP establish as a matter of law that it owes Landry's no duty to defend and/or pay defense expenses under the 2014-15 Golden Nugget Policy?[4]

3.    Did ICSOP establish as a matter of law that it owes Landry's no duty to defend and/or pay defense expenses under the 2013-14 Landry's Policy?[5]

4.    Did ICSOP establish as a matter of law that it owes Landry's no duty to defend and/or pay defense expenses under the 2014-15 Landry's Policy?[6]

5.    Did ICSOP establish as a matter of law that it did not violate Chapter 542 of the Texas Insurance Code by failing to defend and/or reimburse Landry's for defense costs incurred in the *Paymentech* Lawsuit?[7]

6.    Did ICSOP establish as a matter of law that Landry's is not entitled to attorneys' fees?[8]

---

[2] *See* Doc. No. 5 (Joint Case Management Plan) at ¶ 10.

[3] In determining a duty to defend under an insurance policy, the standard of review on appeal is *de novo*. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005).

[4] *See* Note 3, *supra*.

[5] *See* Note 3, *supra*.

[6] *See* Note 3, *supra*.

[7] In the event of a breach of the duty to defend, Chapter 542 applies automatically. *See Keeling v. State Farm Lloyds*, 2002 WL 31230804, at *3–4 (N.D. Tex. Sept. 30, 2002) ("The wrongful rejection of a claim, even if made in good faith, may be considered a delay in payment for purposes of the 60-day rule and statutory damages under Article 21.55"); *Edens v. United Benefit Life Ins. Co.*, 2001 WL 1143140, at *9 (N.D. Tex. Sept. 25, 2001) ("If it is determined that plaintiffs' claim should have been paid, the penalty under Article 21.55 will be automatic."). Thus, because the application of Chapter 542 is based on the Court's determination of the duty to defend, the standard of review on appeal is *de novo*. *See supra* n.3 and accompanying text.

[8] The availability of attorneys' fees—as opposed to the amount awarded—is subject to *de novo* review. *GIC Servs., L.L.C. v. Freightplus USA, Inc.*, 866 F.3d 649, 665 (5th Cir. 2017).

### III.   SUMMARY

ICSOP's Motion should be denied in its entirety.  ICSOP's Motion relies entirely on the argument that coverage for "personal and advertising injury" under the four policies at issue in this lawsuit has not been triggered by the allegations in the underlying *Paymentech* Lawsuit. ICSOP raises no exclusions or other limitations on coverage.  Based on a standard "eight corners" analysis—comparing the allegations in the underlying complaint to the terms of the Policies—the allegations fall squarely within the Policies' coverage for "personal and advertising injury," and thus ICSOP has a duty to defend and/or pay defense costs Landry's incurred in the underlying *Paymentech* Lawsuit.

The *Paymentech* Lawsuit alleges that a "significant Data Breach occurred at numerous Landry's Properties" which affected "millions of credit card accounts" when malware installed by third-parties "search[ed] for data from the magnetic stripe of payment cards that had been swiped (i.e., cardholder name, card number, expiration date and internal verification code) as the data was being routed through affected systems."  The lawsuit alleges that, because of the theft of private cardholder data, Paymentech incurred "costs associated with counterfeit magnetic stripe losses and/or PIN data fraud losses as well as . . . card replacement, recoupment of disputed charges, legal fees, and an increase in labor due to customer inquiries related to the compromise."  These allegations trigger the Policy's coverage for "personal and advertising injury," as the *Paymentech* Lawsuit seeks damages because of (1) the alleged "publication" of private credit card information, which (2) violated cardholders' rights of privacy.  As such, ICSOP breached the Policies by failing to defend and/or pay Landry's defense costs incurred in the *Paymentech* Lawsuit, and its Motion should be denied.

Because ICSOP breached its duty to defend or pay defense costs under the Policies, Landry's is also entitled to statutory damages under Texas Insurance Code Chapter 542, as well as attorneys' fees and prejudgment interest in amounts to be determined at trial. ICSOP's Motion on Landry's Chapter 542 and attorneys' fees claims should likewise be denied.

## IV.    SUMMARY JUDGMENT EVIDENCE

Landry's incorporates by reference the following summary judgment evidence contained in its Appendix in Opposition to Defendant's Motion:

- Affidavit of Rick Liem, Exhibit 1 (App. 001-004);

- Correspondence from ICSOP's representative, Dana LaScala, to Landry's counsel, Micah Skidmore, dated July 2, 2018, attached to and authenticated by Exhibit 1 as Exhibit 1-A (App. 005-022).

## V.    SUMMARY JUDGMENT FACTS

### A.    The Policies.

**The Golden Nugget Policies**

1.     ICSOP issued Commercial General Liability Policy No. GL 192-97-19 to Fertitta Entertainment, Inc. ("FEI") for the period from September 24, 2013 to September 24, 2014 (the "13-14 Golden Nugget Policy").[9]

2.     ICSOP issued Commercial General Liability Policy No. GL 192-97-19 to FEI for the period from September 24, 2014 to September 24, 2015 (the "14-15 Golden Nugget Policy").[10]

3.     Collectively, the 13-14 Golden Nugget Policy and the 14-15 Golden Nugget Policy are referred to herein as the "Golden Nugget Policies."

---

[9] References to Defendant's Exhibits are referred to as "Def. App. __." Def. App.  281, 366.

[10] Def. App. 387, 399.

4.     In addition to insuring FEI, the Golden Nugget Policies insure any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any named insured, including FEI, has more than 50% ownership interest in or exercises management or financial control over at the inception of the policy, provided such subsidiary has been declared to ICSOP prior to the inception date of each policy.[11]

5.     Landry's and Landry's Management, L.P. qualify as insureds under the Golden Nugget Policies pursuant to this provision, a fact ICSOP previously acknowledged.[12]

6.     The Golden Nugget Policies insure, among other things, those sums that the insureds become legally obligated to pay as damages because of "personal and advertising injury," caused by an offense arising out of the insured's business committed in the "coverage territory" during the period of each Policy.[13]

7.     The Golden Nugget Policies define "personal and advertising injury" to include "injury . . . arising out of . . . oral or written publication, in any manner, of material that violates a person's right of privacy."[14]

8.     The Golden Nugget Policies require ICSOP to defend Landry's against any suit seeking covered damages for "personal and advertising injury," as defined above.[15]

---

[11] Def. App. 328, 446.

[12] Ex. 1-A (App. 006) (Correspondence from ICSOP's representative, Dana LaScala, to Landry's counsel, Micah Skidmore, dated July 2, 2018).

[13] Def. App. 290, 405.

[14] Note that the Golden Nugget Policies' coverage grant refers to "personal and advertising injury," (note 14, *supra*), which is defined in the Golden Nugget Policies (Def. App. 298, 414), but the endorsement definition refers to "personal injury and advertising injury." Def. App. 344, 464. Both definitions are identical. *Compare* Def. App. 298, 414 *with* 344, 464.

[15] Def. App. 290, 405.  Alternatively, pursuant to an endorsement contained in the Golden Nugget Policies, the Golden Nugget Policies require ICSOP to pay Landry's "Allocated Loss Adjustment Expenses" in excess of the "Retained Limit." Def. App. 470, 381.  For the reasons stated in Section B.2. below, this endorsement does not apply to the Golden Nugget Policies.

**The Landry's Policies**

9.      ICSOP issued Commercial General Liability Policy No. GL 192-97-17 to FEI, among others, for the period from September 24, 2013 to September 24, 2014 (the "13-14 Landry's Policy").[16]

10.      ICSOP issued Commercial General Liability Policy No. GL 192-97-14 to FEI and Landry's, Inc., among others, for the period from September 24, 2014 to September 24, 2015 (the "14-15 Landry's Policy").[17]

11.      The 13-14 Landry's Policy and 14-15 Landry's Policy are collectively referred to herein as the "Landry's Policies."

12.      In addition to insuring FEI and others, the Landry's Policies also insure any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any named insured, including FEI, has more than 50% ownership interest in or exercises management or financial control over at the inception of the policy, provided such subsidiary has been declared to ICSOP prior to the inception date of each policy.[18]

13.      Landry's and Landry's Management, L.P. qualify as insureds under the Landry's Policies pursuant to this provision, a fact ICSOP previously acknowledged.[19]

14.      The Landry's Policies insure, among other things, those sums that the insureds become legally obligated to pay as damages because of "personal and advertising injury," caused

---

[16] Def. App. 32, 128.

[17] Def. App. 149.

[18] Def. App. 84, 216.

[19] Ex. 1-A (App. 006) (Correspondence from ICSOP's representative, Dana LaScala, to Landry's counsel, Micah Skidmore, dated July 2, 2018).

by an offense arising out of the insured's business committed in the "coverage territory" during the period of each Policy.[20]

15.     The Landry's Policies define "personal and advertising injury" to include "injury . . . arising out of . . . oral or written publication, in any manner, of material that violates a person's right of privacy."[21]

16.     The Landry's Policies require ICSOP to pay "Allocated Loss Adjustment Expenses," including defense costs, in excess of each policies' "Retained Limit," which is $500,000 under each Landry's Policy.[22]

17.     The Golden Nugget Policies and Landry's Policies are collectively referred to herein as the "Policies."

**B.     The *Paymentech* Lawsuit.**

18.     On May 17, 2018, Paymentech, LLC and JPMorgan Chase Bank, N.A. (collectively "Chase Paymentech") filed suit against Landry's in the United States District Court for the Southern District of Texas, Houston Division, in a case styled *Paymentech, LLC and JPMorgan Chase Bank, N.A. v. Landry's Inc. as successor in interest to Landry's Management, L.P.*, Case No. 4:18-cv-01622 (the "*Paymentech* Lawsuit").[23]

19.     The *Paymentech* Lawsuit seeks to hold Landry's liable for damages allegedly resulting from a "Data Breach" involving the alleged publication of personal payment card information belonging to Landry's customers.

---

[20] Def. App. 41, 171.

[21] Note that the Landry's Policies' coverage grant refers to "personal and advertising injury," (note 22, *supra*), which is defined in the Landry's Policies (Def. App. 49, 180), but the endorsement definition refers to "personal injury and advertising injury." Def. App. 102, 236.  Both definitions are identical.  *Compare* Def. App. 49, 180 *with* 102, 236.

[22] Def. App. 137-38, 162-63.

[23] Def. App. 001 (Complaint).

20.     Specifically, Chase Paymentech's complaint makes the following allegations, in

relevant part:

- "Landry's is a merchant that operates several properties around the country, including restaurants, hotels and casinos."[24]

- ". . . Paymentech authorizes payment card transactions with various merchants by virtue of Merchant Payment Card Processing Agreements."[25]

- "Landry's accepts Visa and MasterCard credit cards as a form of payment at its properties."[26]

- "In a typical payment card transaction, the customer presents his or her credit card to the merchant.  The merchant's point of sale system sends the information to a payment processor (here, Paymentech), which then obtains an authorization from the payment or card brand (e.g., Visa, Inc. or MasterCard, Inc.) and the bank that issued the customer's card (the issuer or issuing bank)."[27]

- "On or about December 2, 2015, Chase Paymentech discovered a credit card data compromise related to certain properties owned by Landry's (the 'Data Breach')."[28]

- "During the Data Breach, millions of credit card accounts were compromised at multiple Landry's properties across fourteen different merchant brands, such as Bubba Gump, McCormick & Schmick's Rainforest Café, Saltgrass restaurants, among others (i.e., Landry's Properties)."[29]

- "In sum, the investigation confirmed that Landry's allowed cardholder account data to be put at risk as a result of the Data Breach."[30]

- "Indeed, following its investigation Landry's issued another press release on January 29, 2016, and confirmed that the Data Breach involved the installation of a program on payment processing devices at

---

[24] Def. App. 003 (Compl., ¶ 8).

[25] Def. App. 002 (Compl., ¶ 7).

[26] Def. App. 003 (Compl., ¶ 8).

[27] Def. App. 003 (Compl., ¶ 9).

[28] Def. App. 005 (Compl., ¶ 15).

[29] Def. App. 005 (Compl., ¶ 16).

[30] Def. App. 005 (Compl., ¶ 17).

certain Landry's Properties.  According to Landry's, the program was designed to search for data from the magnetic stripe of payment cards that had been swiped (i.e., cardholder name, card number, expiration date and internal verification code) as the data was being routed through the affected systems."[31]

- "The Data Breach impacted a number of Landry's Properties such as restaurants, food and beverage outlets, spas, and entertainment destinations for several months from approximately May 2014 until December 2015."[32]

- "[I]n connection with data breaches where credit card information is compromised, such as the one at issue here, Visa utilizes a Global Compromised Account Recovery ("GCAR") Program, which is designed to balance the needs of Visa clients in the event of a large scale data compromise.  The GCAR Program is designed to compensate issuing banks—banks that issue credit cards—for a portion of costs associated with counterfeit magnetic-stripe losses and/or PIN data fraud losses, as well as a portion of the associated operating expenses resulting from the compromise.  These costs include, but are not limited to, card replacement, recoupment of disputed charges, legal fees, and an increase in labor due to customer inquiries related to the compromise."[33]

- In accordance with the GCAR program, Visa conducted an investigation and determined that the Data Breach qualified as a GCAR Event.  Visa then calculated the total amount of liability for the Data Breach at $12,678,367.13, and issued a Qualification Notification of GCAR Assessment on July 15, 2017, informing Chase Paymentech that the Data Breach events met all the criteria set forth by the GCAR rules, and were therefore eligible for assessment.[34]

- ". . . MasterCard utilizes a program similar to Visa's GCAR Program called the Account Data Compromise ('ADC') Program."[35]

- "In accordance with the ADC Program, MasterCard conducted an investigation and determined that the Data Breach qualified as an ADC Event.  MasterCard then calculated the total amount of liability for Operational Reimbursement and Fraud Recovery at $10,548,342.50, and issued a Notification of Account Data Compromise Event

---

[31] Def. App. 005-06 (Compl., ¶ 19).

[32] Def. App. 005-06 (Compl., ¶ 19).

[33] Def. App. 006-07 (Compl., ¶ 22).

[34] Def. App. 007 (Compl., ¶ 24).

[35] Def. App. 009 (Compl., ¶ 32).

Responsibility and Final Acquirer Financial Responsibility Report on October 5, 2017."[36]

- "On March 23, 2018, Chase Paymentech sent Landry's a demand letter requesting that it indemnify Chase Paymentech for the $20,062,206.88 assessed by Visa and MasterCard and debited from Chase Paymentech in connection with the Data Breach."[37]

21.    In the *Paymentech* Lawsuit, plaintiffs seek to hold Landry's liable for the above-referenced Data Breach assessments from Visa and MasterCard under claims for breach of contract, quantum meruit, and promissory estoppel.[38]

22.    Landry's provided ICSOP with timely notice of the *Paymentech* Lawsuit under the Policies (the "Claim").[39]

23.    ICSOP denied Landry's Claim and refused any obligation under the Policies with respect to the *Paymentech* Lawsuit.[40]

24.    The *Paymentech* Lawsuit remains pending, and Landry's is currently self-funding its own defense.[41]

25.    As a result of ICSOP's denial of the Claim and refusal to defend Landry's in the *Paymentech* Lawsuit, Landry's has suffered substantial damages.[42]

---

[36] Def. App. 009-010 (Compl., ¶ 33).

[37] Def. App. 012 (Compl., ¶ 43).

[38] Def. App. 012-017 (Compl., ¶¶ 46-73).  Landry's denies all allegations in the *Paymentech* Lawsuit, including that there was compromise of payment card data or resulting losses from any such compromise, and that it has any liability to Chase Paymentech.

[39] *See* Ex 1 (App. 003) (Liem Aff., ¶ 12); Ex. 1-A (App. 005) (acknowledging receipt of notice of the *Paymentech* Lawsuit provided May 23, 2018).

[40] Ex. 1-A (App. 014) (Denial).

[41] Ex. 1 (App. 004) (Liem Aff., ¶ 14).

[42] *Id.* at ¶ 15 (App. 004).

26.     Landry's has spent amounts in excess of $544,000 investigating and defending the allegations in the *Paymentech* Lawsuit through October 2018.[43]

## VI.     ARGUMENT & AUTHORITIES

### A.     ICSOP Has Not Met Its Summary Judgment Burden.

To prevail on summary judgment, ICSOP, as the movant, has the burden to show that "there is no genuine dispute as to any material fact and that [it] is entitled to judgement as a matter of law."[44]   In determining whether ICSOP has satisfied its burden, the Court must view the facts and inferences in the light most favorable to Landry's and resolve all doubts regarding the interpretation of any ambiguous policy terms in favor of Landry's.[45]   The underlying pleadings, which along with the subject policy's terms are determinative of an insurer's duty to defend, must also be liberally construed in favor of coverage.[46]

ICSOP has not argued that Landry's is not an insured under the Policies or that any of the Policies' exclusions apply.  Thus, ICSOP must demonstrate that it is not required to defend and/or pay Landry's defense expenses incurred under Coverage "B" of the Policies as a matter of law in order to prevail on its motion.  ICSOP has not met this burden.

---

[43] *Id.* at ¶ 15 (App. 004).

[44] Fed. R. Civ. P. 56(a).

[45] *Vogel v. Veneman*, 276 F.3d 729, 732 (5th Cir. 2002) ("In deciding whether an issue of material fact is presented, we must view the facts and inferences in the light most favorable to the nonmoving party."); *Acceptance Ins. Co. v. S & S Telecom, Inc.*, 2001 WL 844749, at *2 (Tex. App.—San Antonio July 25, 2001, no pet.) ("[U]nlike other contracts where ambiguous language creates a fact question, insurance policies are analyzed with a presumption in favor of coverage.").

[46] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

**B.**     **ICSOP Is Obligated To Defend Or Pay Landry's Defense Costs Incurred In The *Paymentech* Lawsuit.**

    **1.**     **The Policies' Coverage "B" Requires ICSOP To Defend Or Pay Landry's Defense Costs.**

The Policies' Coverage Part "B" requires ICSOP to defend or otherwise pay Landry's "allocated loss adjustment expenses" in any suit seeking covered damages for "personal and advertising injury," including "injury . . . arising out of . . . oral or written publication, in any manner, of material that violates a person's right of privacy."[47]  ICSOP argues that its obligation under Coverage "B" has not been triggered because (1) ICSOP seeks contract and/or economic damages, (2) no publication took place, and (3) the *Paymentech* Lawsuit does not allege a privacy violation.  ICSOP is wrong on all accounts.

      **a.**     **ICSOP's Duty To Defend Or Pay Landry's Defense Costs Is Triggered By The Factual Allegations In The Complaint, Not The Legal Theories Alleged.**

ICSOP argues that because Paymentech's claim for damages is for breach of contract, there can be no "personal and advertising injury."  Doc. 10 at 10.  ICSOP is wrong.  ICSOP's duty to defend is based not on the legal theories alleged, but on the factual allegations against Landry's in the *Paymentech* Lawsuit.[48]  Under Texas' "eight corners" rule, an insurer is required to defend its insured if, after comparing the factual allegations in the four corners of the underlying pleadings and the four corners of the insurance policy, the allegations *potentially* state a claim covered under the policy.[49]  "The eight corners rule is to be applied liberally in favor of the insured, with any

---

[47] Def. App. 290, 344, 405, 464, 041, 102, 171, 236.

[48] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 & n.13 (Tex. 2007) ("Contrary to the carrier's contentions, the CGL policy makes no distinction between tort and contract damages. . . . The duty to defend must be determined . . . by comparing the complaint's factual allegations to the policy's actual language. . . . the legal theory asserted by the claimant is immaterial to the determination of whether the risk is covered.").

[49] *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Texas*, 249 F.3d 389, 391–93 (5th Cir. 2001).

doubts resolved in favor of the insured.  If *any* allegation in the complaint is *even potentially* covered by the policy, then the insurer has a duty to defend its insured."[50]  The eight-corners rule applies equally to the duty to defend and the duty to reimburse defense costs.[51]  Here, the allegations are not limited to claims that Landry's breached a contract with Chase Paymentech, but assert the publication of private credit card data as a result of a data breach, triggering the "personal and advertising injury" coverage in the Policies.[52]

ICSOP further claims, without any policy reference or legal support, that "economic losses arising from a data breach, such as those sought by Paymentech in the Underlying Lawsuit, are not covered by a commercial general liability policy."  Doc. No. 10 at 7.  This is simply not true.  The Texas Supreme Court has rejected the argument that economic losses are not covered by a commercial general liability policy, reiterating that it is the factual allegations, not the particular type of damages alleged, which trigger an insurer's defense obligation.[53]

---

[50] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) (emphasis original).

[51] *See, e.g., Basic Energy Services, Inc. v. Liberty Mut. Ins. Co.*, 655 F. Supp. 2d 666, 673 (W.D. Tex. 2009), vacated (Jan. 21, 2010) (applying eight-corners analysis to determine an insurer's duty to pay defense costs under a reimbursement CGL Policy); *see also Julio & Sons Co. v. Travelers Cas. & Surety Co. of Am.*, 591 F. Supp. 2d 651, 659 (S.D.N.Y. 2008) (applying Texas law and finding the eight corners rule applies to the duty to advance defense costs in the context of a D&O Policy).

ICSOP asserts that each of the four Policies at issue are reimbursement policies that do not require ICSOP to defend. Doc. 10 at 9.  ICSOP is incorrect.  The Golden Nugget Policies plainly include a duty to defend.  Def. App. 290, 405. ICSOP ignores this language in favor of the SIR endorsement which purports to modify this duty with a duty to reimburse defense costs.  For the reasons explained in Section B.2., this endorsement does not apply.  As such, ICSOP has a duty to defend under the Golden Nugget Policies.  The Landry's Policies, on the other hand, include a duty to reimburse "Allocated Loss Adjustment Expenses," including defense costs, above the self-insured retention.  Def. App. 137-38, 162-63.

[52] *See* Section B.1., *infra*.

[53] *See Lamar Homes*, 242 S.W.3d at 13 (Tex. 2007) ("The insuring agreement does not mention torts, contracts, or economic losses . . . . The CGL's insuring agreement simply asks whether 'property damage' has been caused by an 'occurrence.' Therefore, any preconceived notion that a CGL policy is only for tort liability must yield to the policy's actual language. The duty to defend must be determined here, as in other insurance cases, by comparing the complaint's factual allegations to the policy's actual language.").

b.    The *Paymentech* Lawsuit Alleges "Personal And Advertising Injury" Arising Out Of An Oral Or Written Publication.

Taking a liberal view of the allegations in the *Paymentech* Lawsuit, as the Court must,[54] the *Paymentech* Lawsuit clearly alleges personal and advertising injury arising out of an oral or written "publication."  The *Paymentech* Lawsuit alleges that Landry's allowed private "cardholder account data," including the "cardholder's name, card number, expiration date and internal verification code," "to be put at risk as a result of the Data Breach."[55]  The underlying allegations of a "significant Data Breach" involving "unauthorized charges on certain payment cards" relating to "numerous Landry's properties in several states" establish the "publication, in any manner" of private cardholder data.[56]  Indeed, ICSOP has not alleged that Landry's must be the publisher (and this is not required under the Policies).  The alleged "unauthorized charges on certain payment cards" could have only occurred if the cardholder's account data was "published" and thus accessible to someone other than the authorized user.  The Data Breach's impact on "millions of credit card accounts"[57] as alleged in the *Paymentech* Lawsuit establishes "public" dissemination of private cardholder data.[58]

---

[54] *Primrose Operating Co.*, 382 F.3d at 552 (5th Cir. 2004) ("The eight corners rule is to be applied liberally in favor of the insured, with any doubts resolved in favor of the insured.").

[55] Def. App. 005 (Compl., ¶¶ 17, 18).

[56] Def. App. 005 (Compl., ¶¶ 16, 18); *see also* Def. App. 006-07, 009-10 (Compl., ¶¶ 22-24, 32-33) (addressing the investigations conducted and assessments calculated by Visa and MasterCard for counterfeit fraud losses); *compare TIG Ins. Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232, 238 (Tex. App.—Dallas 2004, pet. denied) ("The word 'publish' is generally understood to mean to disclose, circulate, or prepare and issue printed material for public distribution.").

[57] Def. App. 005 (Compl., ¶ 16).

[58] *See, e.g.*, *Am. Econ. Ins. Co. v. Aspen Way Enters.*, 2015 U.S. Dist. LEXIS 129274, at *19 (D. Mont. Sept. 24, 2015) (holding that "publication" occurs "when information is transmitted to a third party"); *see also generally Tamm v. Hartford Fire Ins. Co.*, 2003 WL 21960374, at *4 (Mass. Super. Ct. July 10, 2003) (finding allegations that insured "accessed the private email accounts" and "sen[t] these private communications via e-mail to outside attorneys" satisfied both prongs under the invasion of privacy clause of the policy); *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*, 724 A.2d 1117, 1122 (Conn. 1999) ("The term 'publication,' however, generally refers to the communication of words to a third person.").

Under similar circumstances, courts applying Texas law have repeatedly ruled that the transmittal of faxes to underlying claimants qualified as "publication" for purposes of the "personal and advertising injury" coverage in a general liability policy, even where such transmittals do not involve the communication of private information to a third-party.[59]   Like the extensive dissemination of individual faxes qualifying as "publication" under a commercial general liability policy, the Data Breach, which involved an equally widespread distribution of private cardholder data in millions of fraudulent payment card transactions, is a "publication" under the Policies. Moreover, at least one court has ruled, under similar facts, that underlying allegations asserting private medical records were available electronically on the internet "at least potentially or arguably" alleges a "publication."[60]

The Policies' plain language supports Landry's interpretation.  Beyond the coverage grant itself, the Policies specifically identify that the "coverage territory" includes "'personal and advertising injury' offenses <u>that take place through the Internet or similar electronic means of communication</u>."[61]   The Policies' reference to offenses taking place through the internet specifically contemplates the electronic "publication" of private cardholder data which was alleged to have been "routed through the affected systems."[62]

---

[59] *Western Rim Investment Advisors v. Gulf Ins. Co.*, 269 F. Supp. 2d 836, 846 (N.D. Tex. 2003), *aff'd*, 96 F. App'x 960 (5th Cir. 2004) ("There is nothing in the CGL policy indicating that the word 'publication' necessarily means communicating the offending material to a third party."); *Dallas Basketball, Ltd.*, 129 S.W.3d at 238 ("[W]e cannot read the term 'publication' to mean only the communication of offending material to a third party."); *see also Nutmeg Ins. Co. v. Employers Ins. Co.*, 2006 U.S. Dist. LEXIS 7246, at *27 (N.D. Tex. Feb. 24, 2006) ("[T]he scope of 'publication' is not limited to offending material sent to a third party."); *Registry Dallas Assocs., L.P. v. Wausau Bus. Ins. Co.*, 2004 U.S. Dist. LEXIS 5771, at *13 (N.D. Tex. Feb. 26, 2004) (following *Western Rim* and *Dallas Basketball*).

[60] *Travelers Indem. Co. of Am. v. Portal Healthcare Solutions, L.L.C.*, 644 F. App'x. 245, 247 (4th Cir. 2016) (internal quotation marks omitted).

[61] Def. App. 047, 178, 296, 412 (emphasis added).

[62] Def. App. 006 (Complaint, ¶ 19).

The opinions interpreting Florida and South Carolina law, on which ICSOP relies, do not alter this analysis.[63]  The *Innovak* Court determined that under Coverage B, the "publication" must be made by the insured.[64]  The Policies do not require this, and no Texas court has adopted this limitation.  The Policies' Coverage B applies to "'personal and advertising injury' caused by an offense arising out of your business."[65]  The suggestion that all "publication" must be undertaken by a corporate insured would improperly render the requirement that the offense "arise out of your business" as needless surplusage contrary to general rules of contract construction.[66]  There is not and cannot be any dispute that the allegations in the underlying Paymentech Lawsuit arise out of Landry's business.  As such, *Innovak* is contrary to the terms of the Policy and Texas law.

ICSOP's reliance on *Rosen Millennium* is even more strained.  Unlike the insurance dispute forming the basis of this lawsuit, the insured in *Rosen Millennium* sought a "defense" under Coverage B despite the fact that no underlying suit had been filed, and the "Notice of Claim" and "demand letter" on which the insured relied to seek coverage "was devoid of any substantive information other than the fact that a 'credit card systems breach' occurred and the relevant dates of the breach."[67]  Such is not the case here, where the *Paymentech* Lawsuit contains pages of detailed allegations describing how the information was alleged to be published by Landry's and retrieved by hackers.[68]  Moreover, the policy in *Rosen Millennium* was triggered not by "publication" but by "making known" private information, which the Court acknowledged may be

---

[63] *See Innovak Int'l, Inc. v. Hanover Ins. Co.*, 280 F. Supp. 3d 1340 (M.D. Fla. 2017); *St. Paul Fire & Marine Ins. Co. v. Rosen Millennium, Inc.*, 2018 WL 4732718 (M.D. Fla. Sept. 28, 2018).

[64] *Innovak*, 280 F. Supp. 3d at 1347.

[65] Def. App. 041, 171, 290, 405 (emphasis added).

[66] *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 n.27 (Tex. 2008) ("We cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable.").

[67] *Rosen Millennium*, 2018 WL 4732718, at *3.

[68] *See* Def. App. 002-06 (Complaint, ¶¶ 7-19).

more limited in nature.[69] *Rosen Millennium* simply is not applicable to the coverage dispute between Landry's and ICSOP.

Regardless, without acceding to any requirement that does not exist in the Policy, the allegations against Landry's do implicate "publication, in any manner, of material that violates a person's right of privacy" by Landry's itself.  Specifically, Chase Paymentech alleges that, during the Data Breach, the private cardholder data was made available to third-parties via a malicious computer program designed to search for and exploit private cardholder data as it was transmitted without encryption <u>by Landry's</u> to the processor, Chase Paymentech.[70]  Chase Paymentech's allegations thus implicate "publication, in any manner" by Landry's via the sending, transmittal and making available private cardholder information on an unencrypted computer network.

### c.    The *Paymentech* Lawsuit Alleges Publication of Material That Violates <u>A Person's</u> Right To Privacy.

ICSOP argues, without any legal authority or reference to the Policies' language, that Paymentech must itself sustain the personal and advertising injury in order to trigger coverage under Coverage B.  This unsupported argument is belied by the plain language of the Policies, which only require an "oral or written publication, in any manner, of material that violates <u>a person's</u> right to privacy."[71]

To the extent ICSOP looks for support from *P.F. Chang's China Bistro, Inc. v. Fed. Ins. Co.*, 2016 WL 3055111, at *5 (D. Ariz. May 31, 2016), ICSOP overlooks a key difference in policy language which makes *P.F. Chang's* wholly inapplicable here.  The cyber-security policy in *P.F.*

---

[69] *Rosen Millennium*, 2018 WL 4732718, at *5 n.3.

[70] Def. App. 005-06 (Compl., ¶ 19) ("[T]he Data Breach involved the installation of a program on payment processing devices at certain Landry's Properties.  According to Landry's, *the program was designed to search for data from the magnetic stripe of payment cards that had been swiped (i.e., cardholder name, card number, expiration date and internal verification code) as the data was being routed through the affected systems*." (emphasis added)).

[71] Def. App. 102, 236, 344, 464 (Policies, emphasis added).

*Chang's* required a "Claim" made to be against an Insured for a "Privacy Injury," which required "actual or potential unauthorized access to <u>such</u> Person's Record."[72]  The court found that "[t]he usage of the word 'such' means that only the Person whose Record is actually or potentially accessed without authorization suffers a Privacy Injury."[73]  Thus, the court concluded coverage was not triggered by the credit card processor's assessments against the insured, because the credit card processor did not itself sustain a "Privacy Injury."[74]

There is, of course, no such limiting language or requirement in the Policies at issue.  Nor does ICSOP's Motion identify any such requirement in any Policies.  There can be no dispute that the private cardholder data referenced in the *Paymentech* Lawsuit is "material that violates <u>a person's</u> right of privacy."[75]  Underlying allegations of "unauthorized charges" impacting "millions of credit card accounts"[76] are allegations of privacy violations sustained by countless persons.  Nor for that matter can ICSOP deny that Chase Paymentech is seeking damages because of the publication, in any manner, of such private cardholder data, regardless of whether the alleged damages take the form of contract, economic losses, or some other theory.[77]  To the extent that ICSOP attempts to rely on the legal theories alleged in order to distance itself from the factual allegations underlying these claimed damages—the publication of private cardholder data—such arguments have already been rejected by the Texas Supreme Court.[78]  Thus, construing the factual

---

[72] *P.F. Chang's*, 2016 WL 3055111, at *5 (emphasis added).

[73] *Id.*

[74] *Id.*

[75] Def. App. 005-06, 013, 015 (Compl., ¶¶ 18, 19, 20, 52, 61) (describing cardholder data to include cardholder name, card number, expiration date and internal verification code).

[76] Def. App. 005 (Compl., ¶ 16).

[77] Def. App. 006-07, 009-010 (Compl., ¶¶ 22-24, 32-33) (addressing the compilation of more than $20 million in assessments from Visa and MasterCard for counterfeit fraud losses and other expenses relating to the Data Breach).

[78] *See Lamar Homes, Inc.*, 242 S.W.3d at 13 & n.13 (Tex. 2007).

allegations in the *Paymentech* Lawsuit liberally, as the Court must, the Paymentech Lawsuit alleges publication of material that violates a person's right to privacy.

>     **2.      Landry's Has Exhausted The "Retained Amount," If Any, Under The Policies.**

In its Motion, ICSOP asserts that Landry's has provided no evidence of exhaustion of the "retained limit[]" under the Policies.[79]  As a preliminary matter, there is no "retained limit" under the Golden Nugget Policies, as the referenced endorsement containing a "retained limit" does not apply to this Claim.  ICSOP cites to a "Self-Insured Retention Endorsement" numbered "79201."[80] ICSOP, ignores, however, the Golden Nugget Policies' "Notice" advising of "Additional Endorsements That *May* Affect Coverage Under Your Policy," including the referenced "Self-Insured Retention Endorsement 79201" identified on the Notice's Schedule.[81]  The "Notice" states that the endorsement "only applies if (1) there is an *occurrence* in a jurisdiction outside of your state of *domicile*; and (2) approval for use of the specific endorsement was granted in the state of the *occurrence* at the time the policy was issued."[82]  ICSOP has not established either element or otherwise demonstrated the application of the "Self-Insured Retention" Endorsement in the Golden Nugget Policies to Landry's Claim.  An "occurrence" is a defined term under the Policies that is used in connection with Coverage "A," not Coverage "B."[83]  ICSOP cannot demonstrate an "occurrence" (*i.e.*, an "accident") as necessary to trigger application of the endorsement in this instance.  Moreover, to the extent that there has been no "occurrence," ICSOP has not and cannot

---

[79] Doc. No. 10 at 9.

[80] *See* Doc. 10 at 9 (citing to Def. App. 137, 162, 380 and 469).

[81] Def. App. 348, 468 (emphasis added).

[82] *Id.* (emphasis original).

[83] *Compare* Def. App. 286, 400 (Golden Nugget Policies, Coverage A, Section 1(b)(1) (Under Coverage A, this insurance applies only if there is bodily injury or property damage caused by an "occurrence") *with id.* at App. 290, 405 (Golden Nugget Policies, Coverage B, Section 1(b), which applies to "'personal and advertising injury' caused by an *offense*" (emphasis added)).

demonstrate that the endorsement was approved for use in the state of the "occurrence" at the time the Golden Nugget Policies were issued.  As such, there is no applicable SIR under the Golden Nugget Policies for this Claim.

Regardless, Landry's has satisfied any applicable "retained limit."  The Landry's Policies each reference a $500,000 SIR.[84]  Should the Court find the 13-14 Golden Nugget Policy and the 14-15 Golden Nugget Policy include the SIR endorsement discussed above, the insured retentions are $100,000 and $150,000 respectively.[85]  Here, Landry's has already spent over $544,000 in defense of the *Paymentech* Lawsuit.[86]  There is no limitation in the Policy that would preclude Landry's from using the $544,000 spent to defend the Paymentech Lawsuit from satisfying the "retained limit," if any, under each Policy, and ICSOP has not argued otherwise.[87]  At a minimum, ICSOP has a duty to defend or pay Landry's defense costs under one, more or all of the Policies.

Accordingly, liberally construed, the underlying allegations against Landry's qualify the *Paymentech* Lawsuit as a "suit" seeking damages because of "personal and advertising injury" as that term is defined in the Policy.[88]  At a minimum, if there is any doubt regarding ICSOP's obligation to defend the Paymentech Lawsuit, all such doubts must be resolved in favor of

---

[84] Def. App. 139, 163.

[85] Def. App. 382, 471.

[86] Ex. 1 (App. 004) (Liem Aff., ¶ 15).

[87] *Cf. California Pac. Homes, Inc. v. Scottsdale Ins. Co.*, 83 Cal. Rptr. 2d 328, 332 (1999) (holding SIRs under different policies could not be "stacked" because "stacking of retained limits would have the effect of affording an insured far less coverage for occurrence-based claims than the insured has purchased."); *Pac. Coast Bldg. Products, Inc. v. AIU Ins. Co.*, 300 Fed. Appx. 546, 549 (9th Cir. 2008) ("A first level insurer called upon to provide coverage cannot reduce its liability by "stacking" SIRs under other policies that covered the risk during the continuous injury period").

[88] *See, e.g., Portal Healthcare Solutions, L.L.C.*, 644 F. App'x. at 247 (agreeing that an underlying complaint asserting that medical records stored on a publicly accessible server "at least potentially or arguably" alleges a "publication" covered under the policies); *Netscape Communications Corp. v. Fed. Ins. Co.*, 2009 WL 2634945, at *1 (9th Cir. Aug. 27, 2009) (finding that an underlying complaint alleging that AOL had intercepted and internally disseminated private online communications was a disclosure to "any" person, triggering coverage as a "personal injury offense").

Landry's.[89]   As such, ICSOP's Motion for Summary Judgment on Landry's breach of contract claims should be denied.

## C.   ICSOP's Breach Of Its Duty To Defend And Otherwise Pay Defense Costs Is An Automatic Violation Of Texas Insurance Code Chapter 542.

By failing to defend and otherwise pay Landry's "allocated loss adjustment expenses" in the *Paymentech* Lawsuit, ICSOP has violated Texas Insurance Code Chapter 542 as a matter of law.[90]   ICSOP argues however, without any authority, that Chapter 542 only applies to a duty to defend, not a duty to reimburse defense costs.   In making such an argument, ICSOP ignores the plain language of the statute as well as established Texas Supreme Court precedent.   Chapter 542 provides that an insurer, who is "liable for a claim under an insurance policy" and who does not promptly pay the claim, is entitled to interest on the amount of the claim at eighteen percent per year as damages, together with reasonable attorneys' fees.[91]   "Claim" is defined as "a first party claim [ ] made by an insured or policyholder under an insurance policy or contract by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured."[92]   The Texas Supreme Court has already made clear that a claim for an insured's defense costs is a "first party claim" within the meaning of the statute.[93]   In so doing, the court found that a "first party claim" "concerns a direct loss to the insured," such as when "an insured seeks recovery for the

---

[89] *See Primrose Operating Co.*, 382 F.3d at 552 ("The eight corners rule is to be applied liberally in favor of the insured, with any doubts resolved in favor of the insured.")

[90] *Vaughan v. Hartford Cas. Ins. Co.*, 277 F. Supp. 2d 682, 689 (N.D. Tex. 2003) ("[T]he relief provided by article 21.55 [the predecessor to Chapter 542] is predicated on a successful claim under the contract." (emphasis added)); *see also Keeling*, 2002 WL 31230804, at *3–4 ("The wrongful rejection of a claim, even if made in good faith, may be considered a delay in payment for purposes of the 60-day rule and statutory damages under Article 21.55"); *Edens*, 2001 WL 1143140, at *9 ("If it is determined that plaintiffs' claim should have been paid, the penalty under Article 21.55 will be automatic.").

[91] TEX. INS. CODE. § 542.0609(a).

[92] TEX. INS. CODE. § 542.051(2).

[93] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 17 (Tex. 2007)

insured's own loss."[94]   The court reasoned that "[w]hen the claim involves a defense benefit, the payee will always be either an insured or the insured's attorney, and for purposes of the prompt-payment statute, no reason supports distinguishing between the two."[95]   Thus, regardless of whether the Policies contain a duty to defend or a duty to reimburse defense costs, they are indisputably a "direct loss to the insured" and a "first-party" claim to which Chapter 542's proscriptions and penalties apply.[96]   *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 652 (Tex. 2009), cited by ICSOP, only acknowledges the holding set forth in *Lamar Homes*.  It does not in any way support ICSOP's argument that an insurer is exempt from Chapter 542 simply because its policy requires the reimbursement of defense costs rather than a direct duty to defend.  Because ICSOP breached its duty to defend or pay defense costs and, by so doing, violated Chapter 542, ICSOP is liable for 18% interest on the amount of Landry's defense costs in the *Paymentech* Lawsuit and its motion for summary judgment should be denied.

## D.   Landry's Is Entitled To Attorneys' Fees.

ICSOP implicitly acknowledges in its Motion that, if Landry's prevails on its breach of contract claims, it is entitled to an award of its reasonable and necessary attorneys' fees under Chapter 38.001 of the Texas Civil Practice & Remedies Code and Section 542.060 of the Texas Insurance Code.[97]   While Landry's acknowledges that attorneys' fees are not recoverable under Chapter 37 of the Texas Civil Practice & Remedies Code in this diversity suit, they are nevertheless recoverable Under Chapter 38 of the Texas Civil Practice & Remedies Code and/or Section

---

[94] *Id.*

[95] *Id.* at 18.

[96] *See Basic Energy Servs.*, 655 F. Supp. 2d at 678 (granting summary judgment to insured on Chapter 542 damages as applied to defense cost reimbursement owed under CGL Policy because "reimbursement of defense cost claims are first-party claims").

[97] *See* Doc. No. 10 at 14.

542.058 of the Texas Insurance Code.  Because, for all of the reasons cited above ICSOP owes a duty to defend and/or pay Landry's "allocated loss adjustment expenses" under one, more or all of the Policies, ICSOP's Motion as to Landry's attorneys' fees should also be denied.[98]

## VII.   PRAYER

Landry's respectfully requests that this Court deny ICSOP's Motion in its entirety and grant Landry's any and all further relief to which it may be justly entitled.

Respectfully submitted,

/s/ Micah E. Skidmore
Micah E. Skidmore
Attorney-in-Charge
State Bar No. 24046856
Southern District Bar No. 294941
micah.skidmore@haynesboone.com

Natalie DuBose
State Bar No. 24077481
Southern District Bar No. 3048865
natalie.dubose@haynesboone.com

HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:     (214) 651-5000
Telecopier:    (214) 651-5940

**ATTORNEYS FOR PLAINTIFF
LANDRY'S INC.**

---

[98] See TEX. CIV. PRAC. & REM. CODE § 38.001; TEX. INS. CODE § 542.060(a).

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Ellen Van Meir
Mariah B. Quiroz
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832

/s/ *Micah E. Skidmore*
Micah E. Skidmore

4838-0156-8642 v.5