UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LANDRY'S, INC., AS SUCCESSOR IN INTEREST TO LANDRY'S MANAGEMENT, LP, <br><br>Plaintiff,<br>VS.<br><br>THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Defendant. | § § § § § § § § § § § § § | CIVIL ACTION NO. 4:18-CV-02679 |

## MEMORANDUM & ORDER

Pending before the Court are cross-motions for summary judgment from both Plaintiff Landry's, Inc., as Successor-in-Interest to Landry's Management, LP ("Landry's"), and Defendant The Insurance Company of the State of Pennsylvania ("ICSOP").

For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment.

### I.     FACTUAL BACKGROUND

Landry's seeks coverage under four commercial general liability insurance policies issued by ICSOP relevant to the time period for this lawsuit. (Doc. No. 10 at 6.) These policies include coverage for amounts that the insured is legally obligated to pay due to "personal and advertising injury." *Id.* at 7. Within the policies, "personal and advertising injury" is defined as "injury . . . arising out of . . . oral or written publication, in any manner, of material that violates a person's right of privacy." *Id.*

In May 2018, Paymentech, LLC and JPMorgan Chase Bank, N.A. (collectively

"Paymentech") filed suit against Landry's seeking to hold Landry's liable for damages resulting from an alleged data breach in a case styled *Paymentech, LLC & JPMorgan Chase Bank, N.A. v. Landry's Inc. as successor in interest to Landry's Management, L.P.*, Case No. 4:18-cv-01622 ("*Paymentech* lawsuit"). (Doc. No. 10 at 7.) Paymentech alleges that, in December 2008, Landry's entered into a Select Merchant Payment Card Processing Agreement ("Agreement") with Paymentech in which Paymentech agreed to process credit card payments for transactions processed at Landry's properties. *Id.* As part of the Agreement, Landry's agreed to abide by Paymentech's "Payment Brand Rules" which included Visa's Global Compromised Account Recovery ("GCAR") Program, and MasterCard's Account Data Compromise ("ADC") Program. *Id.* The GCAR and ADC programs are designed to compensate the banks for costs associated with fraud loss in the event of a data breach or security compromise. *Id.*

Paymentech alleges that, in December 2015, it discovered a credit card data compromise related to certain properties owned by Landry's resulting in millions of credit card accounts being compromised. (Doc. No. 8 at 7.) Landry's subsequently issued a press release acknowledging that a data breach had occurred and stating that compromised data included cardholder names, numbers, expiration dates, and verification codes. *Id.* In accordance with the GCAR and ADC programs, Visa and Mastercard conducted investigations and concluded that the data breach was eligible for assessment under the programs. *Id.* at 7-8. Visa calculated the total amount of liability for the data breach at $12,678,367.13 under the GCAR program. *Id.* at 8. Mastercard calculated the total amount of liability under the ADC program at $10,548,342.50. *Id.* In March 2018, Paymentech sent Landry's a demand letter for the combined total of $20,062,206.88 assessed by Visa and Mastercard and debited from Paymentech in accordance with the Agreement. *Id.* In the *Paymentech* lawsuit, Paymentech seeks to recover the amount assessed by Visa and Mastercard

due to the data breach. *Id.*

After the *Paymentech* lawsuit was filed, Landry's notified ICSOP and requested coverage and indemnification under the above-discussed policies. *Id.* ICSOP denied Landry's claim in July 2018, stating that the claim and damages asserted against Landry's were not covered under the policies. (Doc. No. 10 at 9.) This lawsuit followed.

## II. APPLICABLE LAW

On a motion for summary judgment, the movant can only succeed if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine dispute, a court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 854 (5th Cir. 2010).

Issues of insurance policy interpretation are questions of law appropriate for summary judgment. *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) (citations omitted). Federal courts sitting in diversity jurisdiction apply state law when interpreting insurance policies. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Texas substantive law applies to the insurance policies at issue in this case. *See Stine v. Marathon Oil Co.*, 976 F.2d 254, 259 (5th Cir. 1992).

Under Texas law, the rules governing construction of contracts are applicable to insurance

policies. *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 767–68 (5th Cir. 1995) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987)). Courts construe the insurance policy as a whole and gives effect to the intent of the parties as expressed in the document. *Id.* at 768. The insured entity bears the initial burden of demonstrating that the claim against it is potentially within the scope of the insurance policy. *See W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co.*, 269 F. Supp. 2d 836, 841–42 (N.D. Tex. 2003), *aff'd*, 96 F. App'x 960 (5th Cir. 2004).

The duty to defend and the duty to indemnify "are distinct and separate duties." *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (quoting *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). "An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (citation omitted). An insurance company's duty to defend is thus broader than its duty to indemnify. *See St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Texas*, 249 F.3d 389, 391 (5th Cir. 2001) (citation omitted).

To determine whether an insurer has a duty to defend, Texas courts apply the "eight corners" rule. *Id.* (citing *Potomac Ins. Co. of Illinois v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 551 (5th Cir. 2000)). Under the eight-corners rule, an insurer's duty to defend is determined according to the allegations on the face of the pleading, without reference to facts outside the pleading. *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*, 215 F. Supp. 2d 783, 787 (E.D. Tex. 2002) (citing *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). After the court examines the potential causes of action in the underlying pleadings, it must determine whether the alleged conduct is covered by the insurance policy. *St. Paul Fire & Marine Ins. Co.*, 249 F.3d at 392. When policy terms are not ambiguous,

the terms are given their plain meaning. *Id.* The language in an insurance provision is ambiguous when the court is uncertain as to which of two or more meanings was intended. *Id.* (quoting *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)). When multiple interpretations of a contract term would be reasonable, the court must construe the contract against the insurer. *Id.* (citation omitted).

### III. ANALYSIS

Although ambiguous language is construed in favor of coverage, the Court find that there is no ambiguity in the relevant insurance policies. A plain reading of the contract language shows that these policies were not intended to cover the losses at issue here. If they had been, much clearer language would have been used that could cover injuries arising out of credit card fraud or cyber security breaches. Instead, these are commercial general liability policies that do not identify any duty on Defendant's part to defend or indemnify Plaintiff for injuries stemming from a consumer data breach. Plaintiff could have sought coverage that would unambiguously include coverage of a data breach but chose not to do so.

The relevant language defines "personal and advertising injury" as an injury which arises out of "oral or written publication" of material that "violates a person's right of privacy." (Doc. No. 10 at 7.) The events surrounding the data breach do not meet this standard. A third party hacked into Plaintiff's credit card processing system and stole consumers' credit card information. Plaintiff did not knowingly or willingly publish this information. Plaintiff has failed to identify a single case in which theft of data by a third party was considered a "publication" and the Court declines to hold otherwise here.

Moreover, the damages in question are not "privacy" damages. Plaintiff is not being sued by the consumers whose data were stolen, but rather by the company who processed credit card

payments at Plaintiff's properties. These damages stem from Plaintiff's breach of contract with the payment processor arising from its alleged failure to follow industry standards relating to the transmission of credit card information.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion for Summary Judgment on all Plaintiff's claims and **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**SIGNED** on May 22, 2019, at Houston, Texas.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE